UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                    Plaintiff,

        v.

BDK MAILING GMBH, MAILING
FORCE PTE. LTD., ONLY THREE PTE.
LTD., CHANTAL SEGUY, MARION
ELCHLEPP, AURORA JOUFFROY-
BRANDTNER, MACROMARK, INC.,
MARY ELLEN MEYER, MAIL ORDER
SOLUTIONS INDIA PVT. LTD., DHARTI
B. DESAI and MEHUL A. DESAI,

                    Defendants.

---

Civil Action No. 16-05264-NGG-RER

**[PROPOSED] STIPULATED**
**CONSENT DECREE AND**
**FINAL JUDGMENT**

WHEREAS, the UNITED STATES OF AMERICA commenced this action against

defendants BDK MAILING GMBH, MAILING FORCE PTE. LTD., ONLY THREE PTE.

LTD., CHANTAL SEGUY, MARION ELCHLEPP, AURORA JOUFFROY-BRANDTNER,

MACROMARK, INC., MARY ELLEN MEYER, MAIL ORDER SOLUTIONS INDIA PVT.

LTD., DHARTI B. DESAI and MEHUL A. DESAI (collectively, "Defendants") by filing a

Complaint in this Court;

WHEREAS, the Complaint alleges a claim for relief under the Fraud Injunction Statute,

18 U.S.C. § 1345;

WHEREAS, on September 22, 2016, having considered the *ex parte* application of the

United States and finding that (1) there was probable cause to believe that Defendants were

violating and/or were about to violate 18 U.S.C. § 1341, and that (2) the statutory conditions for

granting a temporary restraining order under 18 U.S.C. § 1345 had been met, the Court issued an

*ex parte* Temporary Restraining Order and Order to Show Cause without notice to Defendants (the "TRO");

WHEREAS, on February 2, 2017, having considered the United States' and defendants BDK MAILING GMBH, MAILING FORCE PTE. LTD., ONLY THREE PTE. LTD., CHANTAL SEGUY, MARION ELCHLEPP, and AURORA JOUFFROY-BRANDTNER's (collectively the "Settling Defendants") February 1, 2017 Joint Motion, the Court entered a Stipulated Preliminary Injunction as to the Settling Defendants;

WHEREAS, defendants BDK MAILING GMBH, MAILING FORCE PTE. LTD., ONLY THREE PTE. LTD. admit and acknowledge the following facts:

1. This action involves direct mail marketing solicitations sent to hundreds of thousands of United States residents. The solicitations profess to come from financial entities, learned scholars, and world-renowned psychics. These solicitation packets, emblazoned with the name and likeness of purported benefactors and written to give the impression that they are personalized communiqués, inform recipients that they will receive large sums of money, guaranteed money-making methods, and/or powerful talismans in return for payment of a relatively small fee, typically $50 to $55.

2. The direct mailing solicitation packets at issue were created and processed by a consortium of entities, including direct mailers, list brokers, printer/distributors, mailing houses, caging services, and payment processors. Each of these entities played a role in Defendants' direct mail campaigns. Specifically:

   - *Direct Mailers* designed the solicitation packets and orchestrated the logistics of the direct mail campaign with the other participants.

   - *List Brokers* helped the direct mailers rent "lead" lists containing the demographic information of consumers most likely to send payments in response to the direct mail campaigns.

   - *Printer/Distributors* used lead lists to personalize and print thousands of copies of multi-piece solicitation packets for each direct mail campaign. Once printed, the printer/distributors "lettershopped" the solicitation packets (*i.e.*, folded, assembled, inserted, and sealed the various printed elements of the solicitations into their mailing envelopes), and transported them in bulk to U.S. or to foreign-based mailing houses.

- *Mailing Houses* pre-sorted the shipments of solicitation packets by address and then sent them to victims through the U.S. mail or foreign post (destined for the United States) using a bulk mailing permit.

- *Caging Services* rented P.O. boxes to receive consumer responses to the solicitation packets.  The services opened the responses, reviewed them for payment information, recorded that information into a database to track income and to help create updated lead lists, and transmitted consumer payments to a payment processer.

- *Payment Processors* collected and processed the payments received from caging services and distributed the proceeds to the direct mailers and the other participants in the direct mail campaign.

3. Defendant BDK Mailing GmbH ("BDK Mailing"), a direct mailer and Swiss business entity with its principal place of business at Ebnifeld 13, 9523 Zuberwangen, Switzerland, was founded in 1997 by Franz Karl Bernhard Elchlepp ("Mr. Elchlepp").

4. Defendant Mailing Force Pte. Ltd ("Mailing Force"), a direct mailer, and Data Mailing International Pte. Ltd. ("DMI"), a direct mail data company, were founded by Mr. Elchlepp in March 2013.  Defendant Only Three Pte. Ltd. ("Only Three"), a direct mailer, was founded by Mr. Elchlepp in October 2013.  All three companies are incorporated in Singapore, with their principal place of business at 33 Ubi Ave. #08-04, Singapore 408868.

5. From their inception, defendants BDK Mailing, Mailing Force, and Only Three each acted as direct mailing companies under the direction of Mr. Elchlepp until his death in March 2015.

6. After founding BDK Mailing in 1997, Mr. Elchlepp established relationships with various service providers around the world, including list brokers, printer/distributors, mailing houses, caging services, and payment processors.

7. For example, in or around 2005, Mr. Elchlepp entered into a relationship with defendant Mail Order Solutions India Pvt. Ltd. ("MOSI"), an Indian business entity, to act as a printer/distributor for certain direct mailers addressed to U.S. consumers. BDK, Mailing Force, and Only Three's direct contacts at MOSI include its Chief Executive Officer, defendant Dharti B. Desai, its Chief Operating Officer, defendant Mehul A. Desai, and its Director, Prethviraj Desai.

8. In or around 2009, Mr. Elchlepp entered into a relationship with defendant Macromark, Inc. ("Macromark"), a New York corporation, to act as BDK Mailing, Mailing Force, and Only Three's primary U.S.-based list manager and list broker. Defendant Mary Ellen Meyer, one of Macromark's client service managers, acted as

one of BDK Mailing, Mailing Force, and Only Three's client service managers and list brokers.

9. Between 2005 and 2016 ("relevant time period"), BDK Mailing, Mailing Force, Only Three (collectively, "BDK"), and their service providers together sent at least 37 different types of direct marketing mail solicitations that falsely professed to come from financial entities, learned scholars, and world-renowned psychics to U.S. consumers. None of the solicitation packets identified BDK as a sender.

10. Solicitations were sent under the following names: "Angèle et Angélina," "Angélique de Succès," "A.P.M.E.," "Baroness de Rothman," "Bio Sana," "Buchmüller & Co.," "Carmen Dumas," "Christine de Paris," "Connor & Smith Transfer Agency," "Dr. Barkley," "Dr. Grant," "Dr. Henderson," "Dr. Kramer," "European Winners Club" (EWC), "Fatima Research Center," "Finkelstein & Partner," "Financial Transfer Institute" (FTI), "Harrison Institute," "I.E.R.," "House of Health," "Madame Soleil," "Magister Davids," "Maître Norbu," "Maître Pascal," "Maître Paul Ritter," "Michael M," "Michelle Devon," "Mineralis," "PB Top News," "Perfect Health," "Professional Promotion," "Sophros I," "Stella," and "Winner Club."

11. BDK and its service providers created dozens of individual direct mail campaigns using each of the preceding names, resulting in hundreds of distinct direct marketing mail campaigns directed towards U.S. consumers.

12. The solicitations contained personalized letters falsely stating that the recipient was the sole recipient of the letter, or one of a small number of recipients, and that the solicitation was sent to the recipient based on unique information about him/her (*e.g.*, selection in a grand prize drawing, personal identification by a secret benefactor, or a psychic vision about the recipient). Nearly identical solicitation packets were sent to hundreds of thousands of residents throughout the United States.

13. The solicitations falsely stated that the recipient would receive either large sums of money, an infallible money-making method, a powerful talisman, or a combination of these. The solicitations urged recipients to make payments, usually ranging from $50 to $55, to assure processing and receipt of the promised riches. The solicitations generally fell into one of three categories:

- *Prize-Transfer Solicitations*. These solicitations state that the recipient has won a lottery or sweepstakes, or has otherwise come into a great fortune, and that the recipient will receive his/her winnings if he/she pays a processing fee.

- *Wealth-Building Solicitations*. These solicitations state that the recipient has won a large sum of money and then urge the recipient to purchase instructions on an infallible method for making money or a unique supernatural talisman guaranteed to provide the user great luck and wealth.

4

- ***Psychic Solicitations.*** These solicitations purport to come from a person with psychic powers who promises to use his/her abilities to improve the recipient's financial and personal circumstances. The solicitations often state that the psychic has seen the individual recipient winning large sums of money through the lottery. The solicitations urge the recipient to purchase various supernatural and divinatory objects or services in order to achieve the predicted wealth.

14. Each solicitation packet instructed the recipient to fill out an enclosed response card and to return it along with his/her payment. The response card frequently asked recipients to affirm that they accept their winnings or are interested in receiving a wealth building method or talisman. The cards then instructed recipients to make a payment via cash, bank or postal check, money order, or credit card using a return envelope pre-addressed to an international P.O. Box controlled by one of the caging services employed by BDK. These caging services included, but were not limited to, Kommunikatie Service Buitenland, B.V. ("KSB"), Trends Service in Kommunikatie, B.V. ("Trends"), DM Service, TW4 GmbH, and VaRo Fulfilment Services, B.V.

15. During the relevant time period, BDK used hundreds of "lead" lists to identify hundreds of thousands of consumers to send the mailings. These lists varied in size. Some contained the demographic information of several thousand potential recipients; others contain information on hundreds of thousands.

16. BDK obtained lead lists in one of two ways:

- First, they maintained in-house lists that they developed and refined based on responses to their mailings. Their U.S.-based lists include: "BDK US Astrology Buyers," "BDK US Astrology Responders," "Delma Happiness Buyers," "Dr. Grant Buyers US," "Only3 Sweepstakes," "PB Sweepstakes US," "PB Sweepstakes US Responders," "Professional Promotional Buyers," "Ritter Astrology Buyers," and "V&G Sweepstakes Buyers US." These lists contain the demographic information of between approximately 21,500 and 96,000 potential recipients each.

- Second, BDK worked with list brokers to identify and rent lists owned by third-parties containing additional names and addresses of recipients most likely to respond favorably to their direct mailings. Macromark acted as BDK's primary list broker since at least 2009. Macromark brokered BDK's rental of scores of lists each year. For example, between January 1, 2015 and September 1, 2016, Macromark brokered BDK's rental of 85 lists containing a total of 477,323 names. BDK paid approximately $45,649 in rental fees for use of these lists. Macromark invoiced each of these External List Rentals to BDK's Singaporean sister-corporation, DMI. Pursuant to Macromark policy, BDK frequently provided Macromark with complete copies of the solicitation packets it planned on addressing using these third-party lead lists. Defendant Meyer was a Macromark list broker responsible for a majority of these rentals.

17. Macromark also helped BDK (through their sister corporation, DMI) to rent their in-house lists to other direct mailers.  Macromark brokered hundreds of rentals of BDK's lists each year.  For example, in 2015 between January 1, 2015 and September 1, 2016, Macromark brokered 559 rentals of BDK-owned astrological and sweepstakes lists containing a total of 3,390,714 names.  Macromark invoiced $291,705 in rental fees for these transactions.  Defendant Meyer was a Macromark list broker responsible for a majority of these rentals.

18. During the relevant period, after template solicitation packet and lead list(s) were selected, BDK would provide MOSI (or another of BDK's printer/distributors) with complete copies of its solicitation packets along with the selected lead lists.  MOSI would then review and proof the draft solicitations for BDK, frequently providing BDK with edits, comments, and feedback.  Once the draft was finalized, MOSI would personalize and print thousands of nearly identical copies of the solicitation packets and ship and/or mail them to the United States, either directly or through other distributors, including Asendia Singapore Pte. Ltd.

19. Between 2005 and 2016, BDK, through MOSI, shipped millions of copies of false and misleading Prize Transfer-, Psychic-, and Wealth-Building Program-related direct mail pieces as air cargo to John F. Kennedy International Airport ("JFK Airport") in the Eastern District of New York and Dulles International Airport in the Eastern District of Virginia for placement into the U.S. mail by domestic mailing houses including, most recently, Direct Mail Management, Inc. in Prince Frederick, MD.  These mail pieces were addressed to consumers across the United States, including consumers in the Eastern District of New York.

20. Between 2005 and 2016, BDK, through MOSI, placed millions of additional copies of false and misleading Prize Transfer-, Psychic-, and Wealth-Building Program-related direct mail pieces into the international post via Asendia Singapore for introduction into the U.S. mail.  These mail pieces were addressed to consumers across the United States, including consumers in the Eastern District of New York.

21. During the relevant time period, the solicitation packets contained envelopes to facilitate the remittal of payments.  The return envelopes are addressed to various foreign P.O. boxes maintained by caging services employed by BDK.

22. During the relevant time period, BDK processed payments through PacNet Services, Ltd., located in Vancouver, Canada.

WHEREAS, the Settling Defendants admit and acknowledge the following facts:

1. After Mr. Elchlepp's death in March 2015, defendants Chantal Seguy and Marion Elchlepp enlisted defendant Aurora Jouffroy-Brandtner to assist them in their attempt to run Mailing Force and Only Three with the service providers Mr. Elchlepp had already established.  Ms. Seguy is Mr. Elchlepp's widow.  Ms. Elchlepp is Mr. Elchlepp's daughter.  Ms. Jouffroy-Brandtner is Ms. Seguy's daughter and Mr.

Elchlepp's step-daughter.  Ms. Jouffroy-Brandtner had no prior exposure to the mailing business and has no ownership interest in any of the entities.

2. In June 2016, BDK, at the direction of defendants Seguy, Elchlepp, and Jouffroy-Brandtner, suspended its direct mail campaigns to U.S. consumers.  Following the suspension, BDK solicitations distributed by BDK's service providers continued entering the U.S. mail stream until mid-September 2016.

WHEREAS defendants BDK Mailing, Mailing Force, and Only Three consent to the entry of this Consent Decree and Final Judgment;

WHEREAS defendants Seguy, Elchlepp, and Jouffroy-Brandtner consent to the entry of this Consent Decree and Final Judgment without any admission of liability or wrongdoing;

WHEREAS, neither this Consent Decree and Final Judgment, nor the fact that defendants Seguy, Elchlepp, and Jouffroy-Brandtner have agreed to a preliminary or permanent injunction, shall constitute an admission of liability, be admitted into evidence or otherwise used against them in any other matter, save for any action under federal law for violation of this Consent Decree and Final Judgment; and

WHEREAS, the Settling Defendants wish to settle this action upon the following terms without further litigation and therefore agree that this Court may enter, and enforce this Consent Decree and Final Judgment against them in the United States, but specifically do not submit to this Court's jurisdiction (or the jurisdiction of any other court in the United States) for any other purpose by entering into this Consent Decree and Final Judgment;

THEREFORE, pursuant to 18 U.S.C. § 1345 and the inherent power of this Court, IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

I.      The Settling Defendants, their agents, officers, employees, and successors, and all other persons and entities in active concert or participation with them are permanently enjoined from:

7

A.      violating 18 U.S.C. §§ 1341 and 1349;

B.      using the United States mail, or causing others to use the United States mail, to distribute any Covered Materials, as defined in Subparagraph VI (A), *infra;*

C.      printing, or causing others to print, any Covered Materials that will be distributed through the United States mail;

D.      receiving, handling, opening, or forwarding any correspondence transmitted through the United States mail that responds, by sending payment or otherwise, to any Covered Materials;

E.      selling, offering for sale, leasing, renting, brokering or licensing any lists compiled in whole or in part from individuals who have responded to any Covered Materials transmitted through the United States mail or whose responses were transmitted though the United States mail ("Customer Lists");

F.      selling, offering for sale, leasing, renting, brokering or licensing any lists compiled from or consisting in whole or in part of United States residents where such lists will be used to address any Covered Materials;

G.      compiling lists in whole or in part of individuals who responded to Covered Materials transmitted through the United States mail or whose responses to Covered Materials were transmitted though the United States mail;

H.      performing, or causing others to perform, "caging services" on correspondence transmitted through the United States mail in response to any Covered Materials. "Caging services" include opening mail; entering or inputting data about such mail into a database or forwarding such data; handling, forwarding, or depositing payments received in such mail, including currency, bank checks, certified

checks, money orders, or credit card charge authorizations; or handling or forwarding any such mail;

I.  performing, or causing others to perform, "payment processing services" for payments received from U.S. residents in response to any Covered Materials. "Payment processing services" include handling credit card transactions, debit card transactions, Automated Clearing House (ACH) transactions, check transactions, money orders, travelers check transactions, or cash transactions; or

J.  acting as a consultant (whether paid or unpaid) for any person engaged in any of the conduct described in Subparagraph I(A)-(I), above.

II. Within seven (7) days of entry of this Consent Decree and Final Judgment, the Settling Defendants are ordered to provide to Settling Defendants' legal counsel all copies of (1) any Customer Lists and (2) any Covered Materials that are currently in their possession, custody or control.  Settling Defendants shall also provide a copy of such Customer Lists and Covered Materials to counsel of record for the United States in this matter and shall not retain in their possession or control any copies of such Customer Lists or Covered Materials.  Within seven (7) days of entry of this Consent Decree and Final Judgment, Settling Defendants shall also direct any third parties that are in custody of Settling Defendants' Customer Lists and Covered Materials, excluding Settling Defendants' legal counsel, to provide all copies of such materials to counsel of record for the United States in this matter and not to retain any copies of such materials in the third party's possession, custody or control, provided however that these third parties may also provide a copy of such Customer Lists and Covered Materials to their own retained counsel.  Within fourteen (14) days of entry of this Consent Decree and Final Judgment,

Settling Defendants shall provide counsel of record for the United States a certification in the form attached here as Exhibit A, sworn under penalty of perjury before a local notary, detailing what materials, if any, were provided to Settling Defendants' legal counsel and to counsel of record for the United States in this matter, and certifying that Settling Defendants no longer have in their possession any such materials.

III.   Within thirty (30) days of entry of this Consent Decree and Final Judgment, the Settling Defendants shall commence the wind down and dissolution of BDK GmbH, Mailing Force Pte. Ltd., Only Three Pte. Ltd., and Data Mailing International Pte. Ltd. by filing all initial paperwork with the relevant authorities.  Defendants Seguy and Elchlepp shall, within fourteen (14) days of the dissolution of each of BDK GmbH, Mailing Force Pte. Ltd., Only Three Pte. Ltd., and Data Mailing International Pte. Ltd, provide counsel of record for the United States a certification, sworn under penalty of perjury before a local notary, attesting to the dissolution of the corporation(s).  If one or more of BDK GmbH, Mailing Force Pte. Ltd., Only Three Pte. Ltd., or Data Mailing International Pte. Ltd is not dissolved within one year of the entry of the Consent Decree and Final Judgment, Defendants Seguy and Elchlepp shall provide counsel of record for the United States with written notice explaining the status of the dissolution of the corporation(s).

IV.   The United States Postal Inspection Service is authorized to open any and all United States Mail that was detained by the United States Postal Inspection Service pursuant to the Temporary Restraining Order or Preliminary Injunction in this matter. The United States Postal Inspection Service shall return any currency, bearer instruments (including but not limited to money orders and travelers checks), and any personal effects that can be positively identified with its sender contained in any mail opened pursuant to this

paragraph.  This return shall include a letter notifying the sender of the disposition of this matter, attached here as Exhibit B.  The United States Postal Inspection Service is authorized to destroy any and all remaining detained mail (including but not limited to envelopes, order forms, correspondence, personal checks, and payment card information (PCI)).

V.      The United States Customs and Border Protection is authorized to open and destroy any Covered Materials, and any substantially similar advertisements, solicitations, promotions, or other materials that were detained by the United States Customs and Border Control pursuant to the Temporary Restraining Order or Preliminary Injunction in this matter..

VI.     For purposes of this Consent Decree and Final Judgment :

A.      "Covered Materials" refers to any materials that contain advertisements, solicitations, promotions, and/or any other materials on behalf of any actual or fictional individual or entity purporting to offer for a fee the following items or services: Prize Transfers, Sweepstakes Reports, Wealth-Building Programs, or Psychics.

B.      "Fee" refers to a payment of any kind, including but not limited to: processing fees, service fees, expediting fees, purchase fees, nominal fees, symbolic payments, gifts and gratuities.

C.      "Prize Transfers" refers to claims, direct or indirect, express or implied, that the recipient has won a lottery, sweepstakes, drawing, prize promotion, or contest or is otherwise entitled to receive a financial windfall or prize that will be delivered after the recipient makes a payment.

D.     "Psychic" refers to persons (actual or fictitious) that are presented in mailed solicitations or other solicitations to consumers as having psychic, clairvoyant, or other such similar special abilities.

E.     "Sweepstakes Reports" refers to reports, journals, or other summaries or compilations of opportunities to enter sweepstakes or lotteries.

F.     "Wealth-Building Programs" refers to instructions, reports, or programs which provide purportedly guaranteed results or methods for making money or an item purportedly guaranteed to provide the user with luck or wealth.

VII.    Within five (5) days of entry of this Consent Decree and Final Judgment, Settling Defendants shall provide copies of this Consent Decree and Final Judgment to all direct mailers, list brokers, printer/distributors, mailing houses, caging services, and/or payment processors with which they reasonably have determined they have done business at any time with respect to any Covered Materials distributed through the United States mail. Within seven (7) days of entry of this Consent Decree and Final Judgment, Settling Defendants shall provide proof of such notice to the Court and the United States, including the name and addresses of the entities and/or individuals to whom the notice was sent, how the notice was sent, when the notice was sent, and a copy of the notice.

VIII.   Defendants Chantal Seguy, Marion Elchlepp, and Aurora Jouffroy-Brandtner acknowledge and agree that the obligations contained in this Consent Decree and Final Judgment binds them both in their individual capacities and as owners and/or agents of Defendants BDK Mailing GmbH, Mailing Force Pte. Ltd., and Only Three Pte. Ltd.

IX.    The Consent Decree and Final Judgment shall not be modified except in writing by Plaintiff and the Settling Defendants and approved by the Court.

X.      Plaintiff and the Settling Defendants agree to bear their own costs and attorneys' fees in this action.

XI.     The Stipulated Preliminary Injunction entered on February 2, 2017, is superseded by this Consent Decree and Final Judgment and is hereby vacated and dissolved.

XII.    The undersigned parties and counsel each represent that she or it is fully authorized to enter into the terms and conditions of this Consent Decree and Final Judgment and to execute and legally bind to this document the Party which she or it represents.

XIII.   The Settling Defendants expressly retain and reserve for purposes of any other case or controversy, except such proceedings as may be necessary to enforce the provisions of this order, any defenses that may be available to them with respect to the underlying conduct alleged in the complaint.

XIV.    The Settling Defendants hereby agree to waive, release, and remit any and all claims, either directly or indirectly against the United States and its agencies, employees, representatives and agents, including but not limited to the Department of Justice, the United States Postal Inspection Service, and their employees, with respect to this action.

XV.     This Consent Decree and Final Judgment may be signed by the parties and counsel in counterparts, each of which constitutes an original and all of which constitute one of the same Consent Decree and Final Judgment.  Signatures delivered by facsimile transmission, or as .pdf attachments to emails, shall constitute acceptable, binding signatures for purposes of this Consent Decree and Final Judgment.

XVI.    This Consent Decree and Final Judgment shall constitute a final judgment and order in this action.

XVII.  This Court retains jurisdiction of this action for the purpose of enforcing or modifying this Consent Decree and Final Judgment and for the purpose of granting such additional relief as may be necessary or appropriate.


**SO ORDERED**

on this _____ day of September, 2017.


_____

**HONORABLE NICHOLAS G. GARAUFIS**
**UNITED STATES DISTRICT JUDGE**

**IT IS HEREBY AGREED:**

## THE UNITED STATES OF AMERICA

September 15, 2017                              BRIDGET M. ROHDE
                                               Acting United States Attorney
                                               Eastern District of New York


                                               /s/ *Thomas Price*

                                               THOMAS PRICE
                                               JOHN VAGELATOS
                                               Assistant United States Attorneys
                                               271 Cadman Plaza East
                                               Brooklyn, New York 11201
                                               Telephone: (718) 254-7000
                                               Fax: (718) 254-7489



September 15, 2017                              CHAD A. READLER
                                               Acting Assistant Attorney General
                                               Civil Division
                                               United States Department of Justice

                                               ETHAN P. DAVIS
                                               Deputy Assistant Attorney General
                                               Civil Division

                                               JILL P. FURMAN
                                               Deputy Director
                                               Consumer Protection Branch


                                               /s/ *Gabriel Scannapieco*

                                               GABRIEL H. SCANNAPIECO
                                               Trial Attorney
                                               Consumer Protection Branch
                                               U.S. Department of Justice
                                               P.O. Box 386
                                               Washington, DC 20044-0386
                                               Telephone: (202) 532-4665
                                               Fax: (202) 514-8742

## DEFENDANTS

September ___, 2017

_____
Director
On behalf of BDK Mailing GMBH

September ___, 2017

_____
Director
On behalf of Mailing Force Pte. Ltd.

September ___, 2017

_____
Director
On behalf of Only Three Pte. Ltd.

September ___, 2017

_____
CHANTAL SEGUY

September 15, 2017

_____
MARION ELCHLEPP

September ___, 2017

_____
AURORA JOUFFROY-BRANDTNER

September 15, 2017

_____
GREGORY J. O'CONNELL
PHILLIP C. PATTERSON
VERA M. KACHNOWSKI
DE FEIS O'CONNELL & ROSE P.C.
500 Fifth Ave., 26th Floor
New York, NY 10110
Telephone: (212) 768-1000
Fax: (212) 768-3511

*Attorneys for Defendants* BDK MAILING
GMBH, MAILING FORCE PTE. LTD.,
ONLY THREE PTE. LTD., CHANTAL
SEGUY, MARION ELCHLEPP, and
AURORA JOUFFROY-BRANDTNER

16

## DEFENDANTS

September ___, 2017

_____
Director
On behalf of BDK Mailing GMBH

September ___, 2017

_____
Director
On behalf of Mailing Force Pte. Ltd.

September ___, 2017

_____
Director
On behalf of Only Three Pte. Ltd.

September 11, 2017

_____
CHANTAL SEGUY

September ___, 2017

_____
MARION ELCHLEPP

September___, 2017

_____
AURORA JOUFFROY-BRANDTNER

September___, 2017

_____
GREGORY J. O'CONNELL
PHILLIP C. PATTERSON
VERA M. KACHNOWSKI
DE FEIS O'CONNELL & ROSE P.C.
500 Fifth Ave., 26th Floor
New York, NY 10110
Telephone: (212) 768-1000
Fax: (212) 768-3511

*Attorneys for Defendants* BDK MAILING
GMBH, MAILING FORCE PTE. LTD.,
ONLY THREE PTE. LTD., CHANTAL
SEGUY, MARION ELCHLEPP, and
AURORA JOUFFROY-BRANDTNER

16

## DEFENDANTS

September __, 2017

_____
Director
On behalf of BDK Mailing GMBH

September 14, 2017

_____
Director
On behalf of Mailing Force Pte. Ltd.

September 14, 2017

_____
Director
On behalf of Only Three Pte. Ltd.

September __, 2017

_____
CHANTAL SEGUY

September __, 2017

_____
MARION ELCHLEPP

September__, 2017

_____
AURORA JOUFFROY-BRANDTNER

September__, 2017

_____
GREGORY J. O'CONNELL
PHILLIP C. PATTERSON
VERA M. KACHNOWSKI
DE FEIS O'CONNELL & ROSE P.C.
500 Fifth Ave., 26th Floor
New York, NY 10110
Telephone: (212) 768-1000
Fax: (212) 768-3511

*Attorneys for Defendants* BDK MAILING
GMBH, MAILING FORCE PTE. LTD.,
ONLY THREE PTE. LTD., CHANTAL
SEGUY, MARION ELCHLEPP, and
AURORA JOUFFROY-BRANDTNER

16

**DEFENDANTS**

September 6, 2017

6. Altieri reconfirmed
9/15/17 / P.C.A. (PP-9995)

_____
Director
On behalf of BDK Mailing GMBH

September __, 2017

_____
Director
On behalf of Mailing Force Pte. Ltd.

September __, 2017

_____
Director
On behalf of Only Three Pte. Ltd.

September __, 2017

_____
CHANTAL SEGUY

September 4, 2017

_____
MARION ELCHLEPP

September __, 2017

_____
AURORA JOUFFROY-BRANDTNER

September __, 2017

_____
GREGORY J. O'CONNELL
PHILLIP C. PATTERSON
VERA M. KACHNOWSKI
DE FEIS O'CONNELL & ROSE P.C.
500 Fifth Ave., 26th Floor
New York, NY 10110
Telephone: (212) 768-1000
Fax: (212) 768-3511

_Attorneys for Defendants_ BDK MAILING
GMBH, MAILING FORCE PTE. LTD.,
ONLY THREE PTE. LTD., CHANTAL
SEGUY, MARION ELCHLEPP, and
AURORA JOUFFROY-BRANDTNER

16

## DEFENDANTS

September ___, 2017

_____
Director
On behalf of BDK Mailing GMBH


September ___, 2017

_____
Director
On behalf of Mailing Force Pte. Ltd.


September ___, 2017

_____
Director
On behalf of Only Three Pte. Ltd.


September ___, 2017

_____
CHANTAL SEGUY


September ___, 2017

_____
MARION ELCHLEPP


September ___, 2017

_____
AURORA JOUFFROY-BRANDTNER


September ___, 2017

_____
GREGORY J. O'CONNELL
PHILLIP C. PATTERSON
VERA M. KACHNOWSKI
DE FEIS O'CONNELL & ROSE P.C.
500 Fifth Ave., 26th Floor
New York, NY 10110
Telephone: (212) 768-1000
Fax: (212) 768-3511

*Attorneys for Defendants* BDK MAILING
GMBH, MAILING FORCE PTE. LTD.,
ONLY THREE PTE. LTD., CHANTAL
SEGUY, MARION ELCHLEPP, and
AURORA JOUFFROY-BRANDTNER

16

# EXHIBIT A

*United States v. BDK Mailing GmbH, et al.,* 16-05264-NGG-RER
Exhibit A to [Proposed] Consent Decree and Final Judgment

## <u>Certification</u>

I, _____, hereby declare as follows:

      Pursuant to Paragraph II of the Stipulated Consent Decree and Final Judgment entered on _____, 2017 (the "Consent Decree") in *United States v. BDK Mailing GmbH, et al.,* 16-05264-NGG-RER (E.D.N.Y.),

I certify as follows (check all that apply):

_____ **No Lists or Covered Materials in Possession or Control.**  As of the date of the Consent Decree, I did not have in my possession or control any Covered Materials, as defined in the Consent Decree, or any mailing lists of any type compiled from recipients who have responded to any Covered Materials.

_____ **Lists Provided to Legal Counsel.**  Pursuant to the Consent Decree, I have provided to my legal counsel all Covered Materials and all lists of any type compiled from recipients who have responded to any Covered Materials.  The materials provided to legal counsel are as follows:

| Materials Provided to Counsel (describe) | Date Provided to Counsel | Counsel Name, Address and Point of Contact |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

(Attach additional sheets if necessary)

[Continued on next page]

1 of 3

*United States v. BDK Mailing GmbH, et al.,* 16-05264-NGG-RER
Exhibit A to [Proposed] Consent Decree and Final Judgment

_____ **Requests to Third Parties.**  On the dates and in the manner listed below, I instructed the individuals identified below to provide to counsel for the United States all Covered Materials and all lists of any type compiled from recipients who have responded to any Covered Materials, to the extent such individual has or had any such lists in his or her possession, and not to retain copies of any such materials or lists.  I indicate below whether the individual, as of the date of this certification, has confirmed that he or she has complied with this directive and the date of such confirmation.

| **Name of Third Party** (name of corporate entity, if applicable, and address) | **Communication of Instruction** | **Response** |
|---|---|---|
| Name of entity/individual contacted:<br><br>Address: | Date:<br><br><br>Manner (e.g., phone, mail, email): | □ Confirmed lists and Covered Materials provided to Counsel for United States<br><br>Name of individual responding:<br><br>Date of confirmation:<br><br>Manner communicated (e.g., phone, mail, email):<br><br>or<br><br>□ No response received within five business days |
| Name of entity/individual contacted:<br><br>Address: | Date:<br><br><br>Manner (e.g., phone, mail, email): | □ Confirmed lists and Covered Materials provided to Counsel for United States<br><br>Name of individual responding:<br><br>Date of confirmation:<br><br>Manner communicated (e.g., phone email):<br><br>or<br><br>□   No response received within five business days |

(Attach additional sheets if necessary)

*United States v. BDK Mailing GmbH, et al.,* 16-05264-NGG-RER
Exhibit A to [Proposed] Consent Decree and Final Judgment

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated _____, and executed at _____.


_____
Signature

_____
Typed or Printed Name and Title




On the _____ day of September in the year 2017, before me, the undersigned notary public, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


_____
Notary Public/[COUNTRY]

# EXHIBIT B

 U NITED S TATES P OSTAL I NSPECTION S ERVICE

DOJ M AIL F RAUD TEAM

**[Date]**

**First Name, Last Name**
**Address 1**
**Address 2**
**City, State Zip**

Re:     United States of America  v. BDK Mailing GmbH, et al.
         Civil Action Number 16-05264-NGG-RER

Dear Sir/Madam:

We are writing you because you previously mailed **[merge field—money/bearer instrument/personal item and specific amount of remission]** in response to a letter claiming you were entitled to receive a cash prize or a car.  We are returning your **[merge field— money/bearer instrument/personal item and specific amount of remission].**

The United States Department of Justice (DOJ) has filed civil charges against BDK Mailing GmbH, Mailing Force Pte. Ltd., Only Three Pte. Ltd., Chantal Seguy, Marion Elchlepp, Aurora Jouffroy-Brandtner, Macromark, Inc., Mary Ellen Meyer, Mail Order Solutions India Pvt. Ltd., Dharti B. Desai, and Mehul A. Desai.  The case, filed in the Eastern District of New York, alleged that the defendants conducted a scheme to defraud consumers through the mail. Specifically, DOJ alleged that the defendants solicited payments from consumers by sending letters representing that the recipient was entitled to receive a large cash prize or other valuable prize in return for a payment in the range of $50 to $55.  DOJ alleged that these representations were fraudulent and that consumers who sent in payments did not receive the promised cash or prizes.  The letters were sent in the names of multiple different companies and individuals.

On September 22, 2016, the United States District Court made a probable cause determination that the defendants were violating and/or were about to violate the mail fraud statute.  Among other things, the Court ordered the U.S. Postal Service to detain mail sent to Post Office boxes controlled by the defendants.

On _____ 2017, as part of a negotiated settlement, the District Court entered permanent injunctions against all defendants, prohibiting them from mailing advertisements representing that a consumer is entitled to receive a prize in return for a payment.  This injunction also requires the U.S. Postal Inspection Service to return to consumers any currency, bearer instruments (such as money orders or travelers checks), or personal items that can be identified with a specific sender.  Enclosed, please find the **[merge field—money/bearer instrument and specific amount of remission]** that was able to be identified as belonging specifically to you.

PO Box 7404
Washington, DC 20044-7404

Should you have any questions about this notice, please contact Sabrina Holmes with the U.S. Postal Inspection Service at (202) 616-5634.  For more information, visit **[insert URL for press release website.]**

